# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYN KEYTANJIAN, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF CHESTER, | : | No. 17-530 |
| *Defendant*. | : | |

## MEMORANDUM

PRATTER, J.                                                                                                  FEBRUARY 14, 2018

Bryn Keytanjian was suspended the day after she told her employer about her bipolar disorder. Despite this, the defendant moves for summary judgment arguing that (1) Ms. Keytanjian was not disabled under the Americans with Disabilities Act and (2) there was no adverse employment action. Given that Ms. Keytanjian suffers from a serious psychological disorder and was fired, the Court denies the motion for summary judgment on all claims with the exception of the Family Medical Leave Act interference claim, which both sides agree should be dismissed.

## BACKGROUND

In 2007, Ms. Keytanjian started working for the County of Chester as a librarian. Throughout her time with the County, she took Family Medical Leave Act (FMLA) leave numerous times, including twice in 2014 and twice in 2015, all relating to physical ailments. Her leave was never denied.

The events giving rise to this lawsuit began in summer 2015. On June 30, 2015, Ms. Keytanjian sent an angry email to her supervisor outlining complaints she had with her

1

supervisor's management. In the email, she noted that "I am also too sensitive because I have suffered deep depression since I was 12 and it is a disability I cannot help[.]" Given the tone of the email, Ms. Keytanjian was called in for a meeting the next day to receive a written warning. Ms. Keytanjian responded by yelling, reiterating that she had depression, and storming out of the meeting. Immediately after this incident, the County suspended her without pay for a day and a half.

Shortly after her suspension, Ms. Keytanjian went on FMLA leave again, this time for foot surgery that would keep her out of work from July 9 until October 30. On October 6, 2015, three weeks before she was set to return from leave, the County sent a letter to Ms. Keytanjian. The letter informed her that her position was being filled, but that she was free to apply to any other position in the County's job posting system for which she was qualified. Ms. Keytanjian remained on a paid medical leave of absence until January 5, 2016, but never returned to work and never applied for another job with the County.

Ms. Keytanjian brought suit against the county alleging four claims.[1] Her first two claims are for discrimination and retaliation under the Americans with Disabilities Act (ADA). Her second two claims are for interference and retaliation under the FMLA.

## LEGAL STANDARD

I. **Motion for Summary Judgment**

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on

---

[1] She also brings various state law claims that are duplicative of these four claims.

which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. *McDonnell Douglas* Burden Shifting

Summary judgment motions such as these require application of the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This test first places the burden on the plaintiff to establish a prima facie case. After a plaintiff makes a prima facie showing, "the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). If the employer succeeds on this point, then "the burden shifts back to the plaintiff 'to convince the factfinder both that the employer's proffered explanation was false . . . and that retaliation was the real reason for the adverse employment action.'" *Id.* (citing *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006)). Although the burden of *production* shifts under this analysis, the burden of *proof* always stays with the plaintiff. *Fuentes*, 32 F.3d at 763.

If the defendant can make this showing, a plaintiff then "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764; *see also Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002).

To discredit the defendant's proffered reason, the plaintiff cannot simply show that the defendant's decision was wrong or ill-conceived. The plaintiff must show that there is a genuine dispute as to whether *discrimination* motivated the defendant's actions. *Id*. at 765. In other words, the relevant inquiry is the perception of the decision maker, not the plaintiff's view of his or her own performance. *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) (citations omitted); *see also Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509 (3d Cir. 1993)

(pretext turns on the qualifications and criteria identified by the employer, not the categories the plaintiff considers important).

DISCUSSION

### III.  ADA Claims[2]

In the familiar *McDonnell Douglas* burden-shifting framework, the defendants challenge Ms. Keytanjian's prima facie case. "To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. American Sterilizer Co*. 126 F.3d 494, 500 (3d Cir. 1997). Here, the County disputes all three. It disputes that (1) that Ms. Keytanjian was disabled under the ADA (2) that it took any adverse actions against her and (3) that these actions were causally connected to her disability. All three claims are meritless at the summary judgment stage.

#### A. Disability Under the ADA

To establish a claim of disability under the ADA at step 1 of the *McDonnell Douglas* test, the plaintiff must show (1) a physical or mental impairment (2) that substantially limits one or more major life functions and (3) that the plaintiff has, or is regarded as having, that type of impairment. 43 U.S.C. §12112. The definition of a "physical or mental impairment" is quite broad. A physical impairment is any "physiological disorder or condition, cosmetic

---

[2] Given that all parties agree that the Rehabilitation Act and Philadelphia Human Relations Act (PHRA) claims rise and fall with the ADA claims, the Court will only discuss the ADA claims here. These state statutes are evaluated under the same legal standard as the ADA. *Kelly v. Drexel Univ*., 94 F.3d 102, 105 (3d Cir. 1996). The parties also agree that, given the factual predicate for the claims, the discrimination and retaliation claims under the ADA rise and fall together.

5

disfigurement, or anatomical loss affecting one or more body systems." 29 C.F.R. § 1630.2(h)(1). A mental impairment is "any mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Likewise, the definition of a major life activity is extremely broad. It includes "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i).

The County agrees that Ms. Keytanjian has bipolar disorder, but argues that Ms. Keytanjian has not produced evidence that this disorder substantially limits a major life function. Ms. Keytanjian has produced letters from doctors regarding her disorder, and testified that it is an "albatross that never leaves" and the "depression is dominant" in her life.[3] *See* Interrogatory Number 7. Therefore, this argument fails as a factual matter. Even assuming this is true, it is difficult to imagine a situation in which someone suffering from bipolar disorder as described would *not* be limited under the applicable regulation. Ms. Keytanjian's bipolar disorder, as described, by its very nature, substantially limits major life functions because of the strong effect it has on a person's ability to function day to day. Therefore, a reasonable jury could find from the evidence that Ms. Keytanjian was disabled for the purposes of the ADA, and this argument is therefore without merit.

---

[3] Ms. Keytanjian also suffers from migraines, which she describes as "particularly debilitating." It is unclear if these migraines are related to her bipolar disorder.

### B. Adverse Employment Action Under the ADA

To prevail in her prima facie case, Ms. Keytanjian must show not only that she is disabled, but also that she was discriminated against through an adverse employment action. "Discrimination under the ADA encompasses [] adverse actions motivated by prejudice and fear of disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). The Third Circuit Court of Appeals has "described an adverse employment action 'as an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.,* 390 F.3d 760, 764 (3d Cir. 2004) (internal quotations omitted); *see also Jones v. Southeastern Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015). The County argues that there was no adverse employment action. But Ms. Keytanjian was suspended without pay for a day and a half and eventually fired. Suspension without pay is an adverse employment action. *See Jones v. SEPTA*, 796 F.3d 323 (3d Cir. 2015) (noting that a suspension with pay is not an adverse employment action but that a suspension without pay meets the *prima facie* case). Although the County argues that Ms. Keytanjian was suspended for her outburst at work, that argument is for a jury to evaluate and weigh. Therefore, a suspension without pay is an adverse employment action, and the Court finds this argument similarly meritless.

### C. Causal Connection

The only remaining hurdle for Ms. Keytanjian is showing a causal connection between the adverse action and the protected activity. This can be established by temporal proximity. "Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and

defeat summary judgment." *LeBoon v. Lancaster Jewish Community Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007).

Here, the temporal proximity is only one day between when Ms. Keytanjian sent an email to her supervisor requesting "flexibility and understanding" for her "deep depression" and when she was suspended. She was also suspended immediately after her written warning the next day, in which she told another manager that she was dealing with depression. The mere fact that Ms. Keytanjian was suspended shortly after she told her managers that she required support for her depression is enough "to create an inference of causality and defeat summary judgment." *Id*. Therefore, because a reasonable jury could find the elements of an ADA claim have been met, both ADA claims will proceed past summary judgment.

### IV. Family Medical Leave Act (FMLA)

The FMLA allows a cause of action for both interference and retaliation. The only claim in dispute here is Ms. Keytanjian's retaliation claim,[4] and the Court finds this claim can proceed past summary judgment.

To meet the requirements for retaliation, Ms. Keytanjian must show that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012).

Ms. Keytanjian was fired while she was on FMLA leave, which is an adverse employment action sufficient to meet the requirements for retaliation. The County argues that

---

[4] Ms. Keytanjian does not dispute that she was always given FMLA leave she was entitled to, and does not dispute the motion for summary judgment regarding FMLA interference. Therefore, the Court grants summary judgment in favor of the County on Ms. Keytanjian's FMLA interference claim.

8

there was never any adverse employment action, because even though the County filled Ms. Keytanjian's position, it offered her the opportunity to apply for a new position. However, even though Ms. Keytanjian was offered the opportunity to re-apply, the termination of her current job still meets the requirement of an adverse employment action. *See*, *e.g.*, *Williams v. St. Joan of Arc Church*, 226 F. App'x 180 (3d Cir. 2007) (holding that a termination with the opportunity to reapply for another job is an adverse employment action, despite the outstanding offer to re-apply for another job). Therefore, the motion for summary judgment on the FMLA retaliation claim is denied, but granted as to the interference claim.

## CONCLUSION

For the foregoing reasons, summary judgment is denied for Ms. Keytanjian's ADA claims and FMLA retaliation claim. Summary judgment is granted for the FMLA interference claim, given that both sides agree that the County never interfered with Ms. Keytanjian's FMLA leave.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE